Tina Wolfson, SBN 174806
twolfson@ahdootwolfson.com
Robert Ahdoot, SBN 172098
rahdoot@ahdootwolfson.com
Ted Maya, SBN 223242
tmaya@ahdootwolfson.com
Alex R. Straus, SBN 321366
astraus@ahdootwolfson.com
**AHDOOT & WOLFSON, PC**
10728 Lindbrook Drive
Los Angeles, California 90024
Tel: 310-474-9111; Fax: 310-474-8585

Attorneys for Plaintiff and All Others Similarly Situated

## UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| JANEL SEMPRE, individually and on behalf of all others similarly situated,<br><br>Plaintiff,<br><br>vs.<br><br>MARRIOTT INTERNATIONAL, INC.; STARWOOD HOTELS & RESORTS WORLDWIDE, INC.; and DOES 1 through 50, inclusive,<br><br>Defendants. | Case No.: 2:18-cv-10324<br><br>**CLASS ACTION**<br><br>**COMPLAINT FOR DAMAGES**<br><br>**DEMAND FOR JURY TRIAL** |

CLASS ACTION COMPLAINT

1

## **CLASS ACTION COMPLAINT**

COMES NOW, Plaintiff Janel Sempre ("Plaintiff"), individually and on behalf of all others similarly situated (the "Class" as defined below), and upon personal knowledge as to the facts pertaining to herself, upon information and belief as to all other matters, and based on the investigation of counsel, brings this class action against Marriott International, Inc. ("Marriott") and Starwood Hotels & Resorts Worldwide, Inc. ("Starwood") (collectively, "Defendants"),  seeking injunctive relief and class-wide recovery of damages, restitution, and other relief against Defendant, and alleges as follows:

## **NATURE OF THE ACTION**

1.      Plaintiffs bring this class action against Defendants for the failure to secure and safeguard customers' personally identifiable information and financial data. Defendants collected this information at the time customers registered on their websites, checked-in to one of their hotels, used their loyalty program ("Loyalty Program").

2.      Plaintiff provided her personal and confidential information to the Defendants on the basis that they would keep his information secure, and employ reasonable and adequate security measures to ensure that hackers would not compromise his information, and notify her promptly in the event of a breach.

3.      Upon information and belief, beginning in or around 2014 and continuing through November 2018, hackers accessed Defendants' network and stole personally identifiable information and payment data, including, but not limited to, names, dates of birth, addresses, phone numbers, email addresses, passport numbers, hotel reward account information, dates of birth, information regarding arrival and departure, reservation dates, communication preferences, and credit card numbers and expiration dates ("Personal Information").

4.      On November 30, 2018, Marriott acknowledged an investigation had

determined that there was unauthorized access to their guest reservation database on or before September 10, 2018 ("Data Breach").

5.     Defendants failed to provide timely, accurate, and adequate notice to Plaintiff and other Class Members that Defendants' systems had been breached and their Personal Information had been compromised.

6.     The Data Breach exposed the Personal Information of approximately 327 million people.

7.     Upon information and belief, Plaintiffs' and Class Members' Personal Information was improperly handled and stored, was unencrypted, and was not kept in accordance with applicable, required, and appropriate cyber-security protocols, policies, and procedures.

8.     Defendants have publicly acknowledged that the Data Breach resulted, in part, from mistakes in a database containing information of guests at its Starwood-branded hotels, admitting in an 8-K filed on November 30, 2018 that it was "devoting the resources necessary to phase out Starwood systems and accelerate the ongoing security enhancements to [its] network."

9.     Upon information and belief, Defendants failed to employ sufficient security measures to avoid the Data Breach despite the fact that Starwood had reported a data breach relating to 54 of its hotels in November of 2015.

10.    Despite this data breach, as well as numerous other high-profile data breaches at other major American corporations during the four years between the initial breach and its discovery, Defendants did not take adequate steps to assure that its systems were secure.

11.    As a result, Plaintiff and Class Members' Personal Information was compromised and stolen.

12.    This same information remains stored in Defendants' computer systems and, thus, Plaintiff and Class Members have an interest in ensuring that their information is safe, and they are entitled to seek injunctive and other equitable relief,

including independent oversight of Marriott's security systems.

13.    Defendants disregarded Plaintiff and Class Members' rights by intentionally, willfully, recklessly, or negligently failing to take adequate and reasonable measures to ensure its data systems were protected, failing to take available steps to prevent and stop the Data Breach from happening, and failing to disclose the material fact that it did not have adequate computer systems and security practices to safeguard customers' Personal Information.

## PARTIES

14.    Plaintiff Janel Sempre is a citizen and resident of the State of California and a frequent user of the Defendants' Loyalty Program, having been a member since 2010.  To date, Plaintiff has not received notification from Defendants that her information was compromised.  However, based upon public information, Plaintiff believes her information was involved in the Data Breach and is taking measures she otherwise would not have to take to ensure that her identity is not stolen and that her accounts are not compromised.

15.    Defendant Marriott International, Inc. is a Delaware corporation with its principal place of business in Bethesda, MD.

16.    Defendant Starwood Hotels & Resorts Worldwide, Inc., which has its principal place of business in Connecticut, is an indirect wholly-owned subsidiary of Marriott, formerly known as Starwood Hotels & Resorts Worldwide, Inc., which Marriott acquired in September of 2016. Starwood Hotels operated by Marriott include: W Hotels, St. Regis, Sheraton Hotels & Resorts, Westin Hotels & Resorts, Element Hotels, Aloft Hotels, The Luxury Collection, Tribute Portfolio, Le Méridien Hotels & Resorts, Four Points by Sheraton and Design Hotels, as well as Starwood-branded timeshare properties. According to Marriott's Form 8-K filed on November 30, 2018, the Data Breach affected Starwood's legacy customer-reservation database.

## JURISDICTION AND VENUE

17.   This Court has jurisdiction over this action under the Class Action Fairness Act, 28 U.S.C. § 1332(d). The aggregated claims of the individual class members exceed $5,000,000.00, exclusive of interest and costs, and this is a class action in which more than two- thirds of the proposed plaintiff class, on the one hand, and Marriott, on the other, are citizens of different states.

18.   This Court has jurisdiction over the subject matter of this class action pursuant to 28 U.S.C. § 1332 because the amount in controversy exceeds $75,000, exclusive of interest and cost, and the action is between citizens of different states.

19.   Venue in the United States District Court for the Central District of California is proper in this Court pursuant to 28 U.S.C. § 1391 because Plaintiff resides in this district, and a substantial part of the events or omissions giving rise to Plaintiff's claims and causes of action occurred in this judicial district.

## FACTUAL BACKGROUND

20.   Defendant Marriott operates more than 6,700 properties across 130 countries and territories, reporting revenues of more than $22 billion in fiscal year 2017.[1]

21.   Defendants store massive amounts of personally identifiable information and financial data on its servers and utilizes this information to maximize its profits through predictive marketing and other marketing techniques.

22.   Defendants admit they collect customers' Personal Information "at touchpoints throughout you guest journey" such as:

---

[1] In November 2015, Defendant Marriott announced that it was purchasing Defendant Starwood for $13.6 billion, creating the world's largest hotel empire.

- Name
- Gender
- Postal address
- Telephone number
- Email address
- Credit and debit card number or other payment data
- Financial information in limited circumstances
- Language preference
- Date and place of birth
- Nationality, passport, visa or other government-issued identification data
- Important dates, such as birthdays, anniversaries and special occasions
- Membership or loyalty program data (including co-branded payment cards, travel partner program affiliations)
- Employer details
- Travel itinerary, tour group or activity data
- Prior guest stays or interactions, goods and services purchased, special service and amenity requests
- Geolocation information
- Social media account ID, profile photo and other data publicly available, or data made available by linking your social media and loyalty accounts
- Data about family members and companions, such as names and ages of children
- Biometric data, such as digital images
- Images and video and audio data via: (a) security cameras located in public areas, such as hallways and lobbies, in our properties; and (b) body-worn cameras carried by our loss prevention officers and other security personnel
- Guest preferences and personalized data, such as your interests, activities, hobbies, food and beverage choices, services and amenities of which you advise us or which we learn about during your visit.[2]

23.    Defendants stores massive amounts of Personal Information and financial data on its servers and utilizes this information to maximize its profits through

---

[2] https://www.marriott.com/about/privacy.mi  (last accessed December 10, 2018).

CLASS ACTION COMPLAINT

predictive marketing and other marketing techniques.

24.     Defendants acknowledged the importance of keeping this information secure, and stated that they sought "to use reasonable organizational, technical and administrative measures to protect Personal Data."[3]

25.     Despite acknowledging their responsibility to keep this information secure, Defendant improperly put the burden on Plaintiff and Class Members to notify Defendants if they suspected their information was not secure, when individuals would not have access to this information, and Defendants were in a superior position to know this information, and were in the exclusive possession of such information.[4]

26.     According to Defendants, Marriott received an alert from an internal system that there was an attempt to access the Starwood guest reservation database on September 8, 2018.

27.     As a result, Defendants' subsequent investigation revealed that unauthorized access to the Starwood network had first been acquired in 2014.

28.     Defendants have now confirmed that unauthorized users copied and exported information regarding more than 500 million guests who made a reservation at a Starwood property since 2014.

29.     The breached database contains approximately 327 million guests' information including some combination of name, mailing address, phone number, email address, passport number, Starwood Preferred Guest ("SPG") account information, date of birth, gender, arrival and departure information, reservation date, and communication preferences.

30.     For other guests, the information also includes payment card numbers and payment card expiration dates.

31.     According to cyber and data security experts, Defendants conduct and

---

[3] *See* Privacy Center, Marriott Group Global Privacy Statement, https://www.marriott.com/about/privacy.mi  (last accessed December 11, 2018).
[4] *Id.*

CLASS ACTION COMPLAINT

7

lack thereof regarding data security is not only insufficient but also below industry standards.

32.     Gus Hosein, executive director of Privacy International, was quoted in news reports about the data breach alleged in this litigation as follows:

> It's astonishing how long it took them to discover they were breached. For four years, data was being pilfered out of the company and they didn't notice. They can say all they want that they take security seriously, but they don't if you can be hacked over a four-year period without noticing.[5]

33.     Defendants failed to implement and maintain reasonable security procedures and practices appropriate to the nature and scope of the Personal Information compromised in the Data Breach.

34.     The Personal Information Defendants compromised, including Plaintiffs' identifying information and/or other financial information, has significant value to identity thieves.

35.     According to the Federal Trade Commission, identity thieves use personal information to extract funds from bank accounts, charge credit cards, open new utility accounts, and obtain medical treatment on victims' health insurance.[6]

36.     Identity thieves also use Personal Information to commit various types of government fraud such as: immigration fraud; obtaining a driver's license or identification card in the victim's name but with another's picture; using the victim's information to obtain government benefits; or filing a fraudulent tax return using the victim's information to obtain a fraudulent refund.

---

[5] "Breach puts hotel guests' data at risk," The Arkansas Democrat Gazette, available at https://www.arkansasonline.com/news/2018/dec/01/breach-puts-hotel-guests-data-at-risk-2/ (last accessed December 10, 2018).

[6] FTC, Signs of Identity Theft, *available at* http://www.consumer.ftc.gov/articles/ 0271- signs-identity-theft (last visited December 11, 2018).

37.     According to the U.S. Government Accountability Office ("GAO"): [S]tolen data may be held for up to a year or more before being used to commit identity theft. Further, once stolen data have been sold or posted on the Web, fraudulent use of that information may continue for years. As a result, studies that attempt to measure the harm resulting from data breach cannot necessarily rule out all future harm.[7]

38.     As a result, Plaintiff and Class Members now face years of constant surveillance of their financial and personal records, monitoring, and loss of rights.

39.     The Class is incurring and will continue to incur such damages in addition to any fraudulent credit and debit card charges and the resulting loss of use of their credit and access to funds, whether or not such charges are ultimately reimbursed by the credit card companies.

**A. The Data Breach**

40.     The Data Breach was a direct and proximate result of Defendants' failure to sufficiently safeguard and protect Plaintiff and Class Members' Personal Information and financial data against reasonably foreseeable threats to the security or integrity of such information and from unauthorized access, use, and disclosure, as required by various state and federal regulations, industry practices, and the common law.

41.     Plaintiff and Class members' Personal Information and financial data are private and sensitive in nature and was left inadequately protected by Defendants.

42.     Defendants did not obtain Plaintiffs' and Class Members' consent to disclose their Personal Information and financial data to any other person as required by applicable law and industry standards.

43.     As a direct and proximate result of Defendants' wrongful action and

[7] GAO, Report to Congressional Requesters, at p.33 (June 2007), *available at* http://www.gao.gov/new.items/d07737.pdf (last visited December 11, 2018).

CLASS ACTION COMPLAINT
9

1  inaction and the resulting Data Breach, Plaintiff and Class Members are in an
2  imminent, immediate, and continuing increased risk of harm from identity theft and
3  identity fraud, requiring spemd time and effort to mitigate the actual and potential
4  impact of the Data Breach.

5        44.     Consumers, including Plaintiff and the Class Members, place value
6  in data privacy and security, and they consider it when making decisions on where to
7  stay for travel.

8        45.     Plaintiffs would not have stayed at the Starwood hotels nor would they
9  have used their debit or credit cards to pay for their Starwood stays had they known
10  that Defendants did not take all necessary precautions to secure the personal and
11  financial data given to it by consumers.

12        46.     Defendants failed to disclose its negligent and insufficient data security
13  practices and consumers relied on or were misled by this omission into paying, or
14  paying more, for accommodations at Starwood.

15        47.     Personal Information of the type at issue in this action is both private and
16  valuable. On what is known as the "dark web," personal information of the kind
17  compromised by Defendants is highly valuable, estimated at $20.00 for information
18  pertaining to loyalty accounts, between $5.00 and $110.00 for credit card information,
19  and $1000.00-$2000.00 for passport information.

20        48.     The Data Breach presents both immediate and ongoing risks to consumers.
21  Data thieves use information of the type compromised by the Data Breach – including,
22  but not limited to, names, phone numbers, email addresses, passport numbers, dates of
23  birth, dates of check-in and departure, and credit card numbers and expiration dates – in
24  part, to: (i) gain access to electronic accounts, including social media and bank and
25  credit card accounts, (ii) impersonate consumers in a manner detrimental to their
26  finances or personal reputations, including by creating new accounts without
27  authorization, and (iii) harass, blackmail or otherwise target individuals for fraud or
28  other crimes.

49.     After the Data Breach, Plaintiff and the Class Members will have to undertake costly and time-consuming remedial measures including, among other things, disputing and potentially prosecuting claims regarding contested charges and taking steps to repair damage to credit ratings and other reputational harm. Such consumers also face risks of civil litigation initiated by creditors based on false charges to their accounts.

50.     Marriott's wrongful actions and inaction directly and proximately caused the theft and dissemination into the public domain of Plaintiff and Class Members' Private Information, causing them to suffer, and continue to suffer, economic damages and other actual harm for which they are entitled to compensation, including:

    a.  theft of their Personal Information and financial data;

    b.  untimely and inadequate notification of the Data Breach;

    c.  improper disclosure of their Private Information;

    d.  loss of privacy;

    e.  ascertainable losses in the form of out-of-pocket expenses and the value of their time reasonably incurred to remedy or mitigate the effects of the Data Breach;

    f.  ascertainable losses in the form of deprivation of the value of their Personal Information and financial data, for which there is a well-established national and international market;

    g.  overpayments to Marriott for products and services purchased during the Data Breach in that a portion of the price paid for such products and services by Plaintiff and Class Members to Marriott was for the costs of reasonable and adequate safeguards and security measures that would protect customers' Private Information, which Defendants did not implement; and

    h.  deprivation of rights they possess under the various state statutes.

51.     Plaintiff and Class Members continue to have an interest in insuring that their Personal Information and financial data which remains in the possession of Defendants is secure, remains secure, and is not subject to further theft.

**B. Defendants' Response to Data Breach**

52.     Defendants' response subsequent to announcing the Data Breach is insufficient and inadequate.

53.     Defendants has failed to provide information sufficient to identify which people have been impacted, leading to confusion and bottlenecks in regards to receiving timely updates.

54.     Defendants set up a website and call center to handle inquiries following its announcement of the Data Breach.  However, the large number of potentially impacted people has severely diminished its effectiveness.

55.     Defendants provided its customers the opportunity to enroll in WebWatcher, an internet monitoring service, for one year.  However, WebWatcher is not a credit monitoring service and has no ability to monitor the dark web where the majority of illegal internet activity occurs.  Further, data thieves are aware of the one-year expiration period associated with Defendants' offer.  As past data breaches have shown, data thieves will often wait years to purchase and use stolen data.[8]

56.     Defendants have disclosed that the Starwood Database "contains information on up to approximately 500 million guests who made a reservation at a Starwood property" and that "[f]or approximately 327 million of these guests, the information includes some combination of name, mailing address, phone number, email address, passport number, Starwood Preferred Guest ('SPG') account

---

[8] *See, e.g.*, Matt Tatham, "A Year After the Equifax Breach: Are You Protecting Your Data?", *available at* https://www.experian.com/blogs/ask-experian/a-year-after-the-equifax-breach-are-you-protecting-your-data/ (last accessed December 12, 2018).

information, date of birth, gender, arrival and departure information, reservation date, and communication preferences."

57.     According to Defendants, [f]or some, the information also includes payment card numbers and payment card expiration dates[.]"

58.     Regarding the remaining 173 million guests, Defendants disclosed that the compromised information "was limited to name and sometimes other data such as mailing address, email address, or other information." However, Marriott has not provided consumers with an explanation of what this "other information" might be.

59.     As a result, these 173 million people remain subject to ongoing risks, requiring them to take various remedial steps lest identity thieves use their Personal Information for nefarious purposes months, years or decades later. These remedial steps, which include, among other things, potentially cancelling accounts, monitoring activity on such accounts, and otherwise remaining vigilant for years or even decades to ascertain whether their information is being used to their detriment, are costly, time-consuming and emotionally harmful.

60.     Defendants' failure to notify any customers until approximately four years after the initial breach, and more than 10 weeks after Defendants claim to have first discovered a breach, denied Plaintiff and the Class members the opportunity to adequately protect themselves from its consequences.

## CLASS ACTION ALLEGATIONS

61.     Plaintiffs seek relief in their individual capacities and as representatives of all others who are similarly situated. Pursuant to Fed. R. Civ. P. 23(a) and (b)(2), (b)(3), and (c)(4), Plaintiffs seek certification of a Nationwide class as described herein. The national class is initially defined as follows:

> all persons residing in the United States whose personal and/or financial information was disclosed in the Data Breach affecting Marriott from 2014 to 2018 (the "Nationwide Class")

62.     Plaintiff further brings this case as a class action on behalf of a statewide subclass defined as follows:

> all persons residing in the State of California whose personal and/or financial information was disclosed in the Data Breach affecting Marriott from 2014 to 2018 (the "California Class").

63.     Excluded from each of the Class are Defendants, including any entity in which Defendants have a controlling interest, are a parent or subsidiary, or which are controlled by Defendants, as well as the officers, directors, affiliates, legal representatives, heirs, predecessors, successors, and assigns of Defendants. Also excluded are the judges and court personnel in this case and any members of their immediate families.

64.     <u>Numerosity</u>. Fed. R. Civ. P. 23(a)(1). The members of the Class are so numerous that the joinder of all members is impractical. While the exact number of Class members is unknown to Plaintiffs at this time, Marriott has acknowledged that information of over 500 million customers may have been compromised.

65.     <u>Commonality</u>. Fed. R. Civ. P. 23(a)(2) and (b)(3). There are questions of law and fact common to the Class, which predominate over any questions affecting only individual Class members. These common questions of law and fact include, without limitation:

  a.  Whether Defendants violated the various state Deceptive and Unfair Trade Practices Act by failing to implement reasonable security procedures and practices;

  b.  Whether Defendants violated state privacy laws in connection with the actions described herein;

  c.  Whether Defendants violated laws by failing to promptly notify class members their personal information had been compromised;

d. Whether class members may obtain injunctive relief against Defendants under privacy laws to require that it safeguard or destroy, rather than retain, the Personal Information of Plaintiffs and Class members;

e. Which security procedures and which data-breach notification procedure should Defendants be required to implement as part of any injunctive relief ordered by the Court;

f. Whether Defendants have an implied contractual obligation to use reasonable security measures;

g. Whether Defendants have complied with any implied contractual obligation to use reasonable security measures;

h. What security measures, if any, must be implemented by Defendants to comply with its implied contractual obligations; and

i. What the nature of the relief should be, including equitable relief, to which Plaintiffs and the Class members are entitled.

66.     All members of the proposed Class are readily ascertainable. Defendants have access to addresses and other contact information for millions of members of the Class, which can be used for providing notice to many Class members.

67.     Typicality. Fed. R. Civ. P. 23(a)(3). Plaintiffs' claims are typical of those of other Class members because Plaintiffs' information, like that of every other Class Member, was misused and/or disclosed by Defendants.

68.     Adequacy of Representation. Fed. R. Civ. P. 23(a)(4). Plaintiffs will fairly and adequately represent and protect the interests of the members of the Class. Plaintiffs' Counsel are competent and experienced in litigating class actions, including privacy litigation.

69.     Superiority of Class Action. Fed. R. Civ. P. 23(b)(3). A class action is superior to other available methods for the fair and efficient adjudication of this controversy since joinder of all the members of the Class is impracticable. Furthermore, the adjudication of this controversy through a class action will avoid

the possibility of inconsistent and potentially conflicting adjudication of the asserted claims. There will be no difficulty in the management of this action as a class action.

70.     Damages for any individual class member are likely insufficient to justify the cost of individual litigation, so that in the absence of class treatment, Marriott's violations of law inflicting substantial damages in the aggregate would go un-remedied without certification of the Class.

71.     Class certification is also appropriate under Fed. R. Civ. P. 23(a) and (b)(2), because Marriott has acted or has refused to act on grounds generally applicable to the Class, so that final injunctive relief or corresponding declaratory relief is appropriate as to the Class as a whole.

## FIRST CAUSE OF ACTION

### Negligence

### (On Behalf of the Nationwide Class Against All Defendants)

72.     Plaintiff re-alleges and incorporates by reference the foregoing paragraphs of this complaint as if fully set forth herein.

73.     Defendants owed a duty to Plaintiff and Class Members to exercise reasonable care in safeguarding, securing and protecting Plaintiff's and the Class Members' debit and credit card information from, among other failures, being compromised, lost, stolen, misused, and/or disclosed to unauthorized parties.

74.     Defendants also owed a duty to Plaintiff and the Class Members to have commercially reasonable procedures in place to detect and prevent the loss or unauthorized dissemination of Plaintiff's and Class Members' debit and credit card information.

75.     Defendants, through their actions and/or omissions, failed to exercise reasonable care and breached each and every one of their duties owed to Plaintiff and Class Members.

76.     Section 5 of the FTC Act prohibits "unfair . . . practices in or affecting commerce." Defendants violated Section 5 by failing to have industry standard procedures in place to detect and prevent the loss or unauthorized dissemination of Plaintiff's and Class Members' debit and credit card information.

77.     Plaintiff and Class Members are within the class of persons that the FTC Act was intended to protect, and the harm that they suffered is the type of harm that the Act was intended to guard against.

78.     Defendant's breaches of duties owed to Plaintiff and Class Members proximately and directly caused Plaintiff's and Class Members' past and future injuries.

79.     Plaintiff and Class Members suffered actual past injuries, including economic injuries, and will suffer future injuries as a result of Defendants' negligence.

## SECOND CAUSE OF ACTION
### Breach of Implied Contract
### (On Behalf of the Nationwide Class Against All Defendants)

80.     Plaintiff re-alleges and incorporates by reference the foregoing paragraphs of this complaint as if fully set forth herein.

81.     Defendants offered to and undertook duties to, among other obligations, reasonably safeguard Plaintiff's and Class Members' credit and debit card information.

82.     By providing their credit and debit card information, Plaintiff and the Class Members accepted Defendants' offer.

83.     Defendants, Plaintiff and the Class Members entered into implied contracts with Defendants whereby Defendants offered to undertake and undertook duties to, among other obligations, reasonably safeguard Plaintiff's and Class Members' credit and debit card information and process such information in a manner so as not to permit third parties to access it.

84.     Defendants, Plaintiff and Class Members mutually intended to be bound by their implied contract.

---

CLASS ACTION COMPLAINT

17

85.     There was consideration for the implied contract between Defendants, Plaintiff and Class Members, including but not limited to Defendants' receipt of payments for their restaurant services.

86.     Defendants breached the implied contracts with Plaintiff and Class Members.

87.     Plaintiff and Class Members suffered actual injuries, including economic injuries, and will suffer future injuries as a direct and proximate result of Defendants' breach of implied contracts.

### THIRD CAUSE OF ACTION

### Violations of the California Unfair Competition Law

### Cal. Bus. & Prof. Code § 17200, *et seq.*

### (On Behalf of the California Class Against All Defendants)

88.     Plaintiff re-alleges and incorporates by reference the foregoing paragraphs of this complaint as if fully set forth herein.

89.     Defendants' misconduct constitutes unfair, unlawful and fraudulent business practices within the meaning of California's Unfair Competition Law, Cal. Bus. & Prof. Code § 17200, *et seq.* ("UCL").

90.     Defendants' misconduct violated several laws alleged and therefore violated the UCL.

91.     Defendants' statements concerning its abilities to properly safeguard Plaintiff and Class Members' credit and debit card information were fraudulent and therefore also violated the UCL.

92.     Defendants' failure to safeguard Plaintiff and Class Members' credit and debit card information was unfair and therefore also violated the UCL.

93.     Plaintiff and Class Members suffered actual injuries, including economic injuries, and will suffer future injuries as a direct and proximate result of Defendants' violations of the UCL.

94.     Defendants were guilty of oppression, fraud, and/or malice in that Defendants acted and/or failed to act with a willful and conscious disregard of the rights of Plaintiff and the Class Members.  Plaintiff and the Class Members therefore seek punitive damages on behalf of themselves and the Class.

## FOURTH CAUSE OF ACTION

### Violations of the California Customer Records Act

### Cal. Civ. Code § 1798.80, *et seq.*

### (On Behalf of the California Class Against All Defendants)

95.     Plaintiff re-alleges and incorporates by reference the foregoing paragraphs of this complaint as if fully set forth herein.

96.     Defendants' misconduct resulted in a "breach of the security system", within the meaning of Section 1798.82(g) of the California Consumer Records Act, Cal. Civ. Code § 1798.80, *et seq.*

97.     Defendants lost Plaintiff and the Class Members' "personal information" within the meaning of Cal. Civ. Code § 1798.80 (e).

98.     Among other misconduct, Defendants failed to implement and maintain reasonable security procedures and practices appropriate to the nature and scope of the information compromised in the data breach of the system(s) holding Plaintiff's and Class Members' credit and debit card information.

99.     Defendants unreasonably delayed in informing Plaintiff and Class Members regarding the security breach of Plaintiff's and Class Members' credit and debit card information after Defendants knew the data breach had occurred.

100.    Defendants failed to disclose to Plaintiff and Class Members, without unreasonable delay, and in the most expedient time possible, the security breach of their debit and credit card information when Defendants knew or reasonably believed such information had been compromised.

101.    Upon information and belief, no law enforcement agency instructed Defendants that notification to Class Members would impede investigation.

102.    Plaintiff and Class Members suffered actual injuries, including economic injuries, including economic injuries, and will suffer future injuries as a direct and proximate result of Defendants' violations of Cal. Civ. Code § 1798.80 *et seq.*

103.    Plaintiff, individually and on behalf of the Class, seeks all remedies available under Cal. Civ. Code § 1798.84, including, but not limited to: (a) damages suffered by Class Members as alleged above; (b) statutory damages for Defendants' willful, intentional, and/or reckless violation of Cal. Civ. Code § 1798.83; and (c) equitable relief.

104.    Plaintiff, individually and on behalf of the Class, also seeks reasonable attorneys' fees and costs under Cal. Civ. Code § 1798.84(g).

## PRAYER FOR RELIEF

Wherefore, Plaintiff and the Class respectfully request the following and pray for judgment as follows:

1.    For a declaration that this lawsuit may be properly maintained as a class action and certifying the Class claims herein;

2.    For general damages according to proof;

3.    For special damages according to proof;

4.    For restitution in amounts according to proof;

5.    For injunctive relief, including orders (1) compelling Defendants to institute appropriate data collection and safeguarding methods and policies with regard to consumer information; and (2) compelling Defendants to provide detailed and specific disclosure of what types of data have been compromised as a result of the data breach;

6.      For any other available penalties for each illegal or fraudulent business act or practice, including but not limited to those provided for violations of Cal. Civ. Code § 1798.84;

7.      For costs and expenses of suit incurred herein, including investigative costs;

8.      For attorneys' fees;

9.      For punitive damages;

10.     For prejudgment and post-judgment interest; and

11.     Such other and further relief as is proper and just.

## DEMAND FOR JURY TRIAL

Plaintiff, on behalf of herself and the Class, hereby demands a jury trial for all issues so triable.

Dated:  December 13, 2018            Respectfully submitted,

**AHDOOT & WOLFSON, PC**

Alex R. Straus
Tina Wolfson
Robert Ahdoot
Ted Maya
10728 Lindbrook Drive
Los Angeles, California 90024
Tel: 310-474-9111
Fax: 310-474-8585
Email: astraus@ahdootwolfson.com
twolfson@ahdootwolfson.com
rahdoot@ahdootwolfson.com
tmaya@ahdootwolfson.com